**UNITED STATES of America**
**v.**
**Rocco NEVES, Defendant.**
**No. 67 Cr. 116.**

United States District Court
S. D. New York.
April 27, 1967.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for the United States of America, Richard A. Givens, Asst. U. S. Atty., of counsel.

Stanger & Rothstein, New York City, for defendant by Abraham M. Stanger, New York City.

## MEMORANDUM

BONSAL, District Judge.

Defendant Neves, named in a nine-count indictment charging violations of 26 U.S.C. § 7201 and § 7206(1), moves.

1) for the suppression and return of all papers, records, books, and documents claimed by the defendant to have been seized by the government;

2) for the suppression and return to the defendant of all oral statements made or given by the defendant to the Internal Revenue Service or its agents or employees;

3) for the inspection of the minutes of the grand jury upon which the indictment against the defendant was based; and

4) for dismissal of the indictment against the defendant. At oral argument defendant's counsel agreed with the Assistant United States Attorney appearing for the government that defendant's motions to inspect the grand jury minutes and to dismiss the indictment were dependent upon defendant's motion to suppress, and that if the motion to suppress was denied, then defendant's motions to inspect the grand jury minutes and to dismiss the indictment would also have to be denied.

The indictment concerns the years 1960, 1961, and 1962 and charges, in the first three counts, that the defendant, as

president of John Musante & Co., Inc. (the corporation), wilfully attempted to evade income taxes due from the corporation (26 U.S.C. § 7201); in the second three counts, that the defendant wilfully made false income tax returns on behalf of the corporation (26 U.S.C. § 7206 (1)); and, in the last three counts, that, while filing joint returns with his wife, the defendant wilfully attempted to evade income taxes due from him and his wife (26 U.S.C. § 7201).

According to the affidavit submitted by the defendant in support of his motion, two Special Agents of the Internal Revenue Service, Hines and Wolff, appeared on or about September 10, 1963 at the premises of the corporation where they met the defendant and demanded all his books and records for 1961.[1] Hines and Wolff identified themselves as Agents from the Internal Revenue Service, warned the defendant that anything he said could be used against him, and did not advise him that he had a right to consult an attorney. When the Agents demanded defendant's books and records, he told them he did not have them all with him and, overnight, without consulting an attorney, he gathered the records requested by the Agents, consisting of books and accounts and papers of the corporation, and on September 11, 1963, brought the records for 1961 to Agent Hines at the offices of the Internal Revenue Service at 245 West Houston Street. A few weeks later, defendant was asked for all the corporation's books and accounts and papers for the years 1959 through 1962, and on October 14, 1963, he had one of his drivers deliver these records by truck to Agent Hines at 245 West Houston Street. On November 7, 1963, defendant appeared and was questioned at 245 West Houston Street by Agents Hines and Wolff and the questions and answers were taken down by a reporter. Defendant states (and it appears from the transcript of the interview) that he did not have an attorney

with him and that before being asked any questions, he was told he had been asked to appear in regard to the tax liability of the corporation for the years 1959 through 1962 and was advised he did not have to answer questions or submit records tending to incriminate him, but was not advised he had a right to consult counsel. Defendant did not consult an attorney until November 18, 1963. On June 4, 1964, defendant appeared with his attorney at the offices of the Internal Revenue Service at 120 Church Street before Agents Hines and Wolff and gave answers to additional questions for the purpose of clarifying his previous answers. On July 1, 1964 defendant signed transcripts of the questions and answers of November 7, 1963 and of June 4, 1964.

### Books and Records

Defendant seeks the suppression and return of what appear to be papers, records, books and documents of the corporation, on the ground that they were acquired as a result of an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution. Defendant claims that when Agents Hines and Wolff appeared at the corporation's premises, showed him their identification and demanded the corporation's records, he treated their demand as an official act, assumed he had to comply, and felt constrained to do so. Defendant further claims that he was deceived when he turned over the corporation's records because the Agents said the tax liability of the corporation was being investigated and failed to tell him that his possible criminal liability for tax evasion and fraud was being investigated. It is defendant's contention that he has standing to seek the suppression of corporate books and records since, 1) under the theory of the prosecution, any corporate records would be part of the defendant's personal records; 2) the defendant's Fourth Amendment rights cannot otherwise be protected; and 3)

---

1. Although the defendant states that the Agents demanded his books and records, it appears that the only books and records turned over to the government by the defendant were books and records of the corporation.

the corporation is the alter ego of the defendant.[2]

Defendant's claims do not warrant suppression of the papers, records, books and documents he turned over to the government. Assuming that defendant could show there was a search and seizure in violation of the Fourth Amendment, it is established in this Circuit that he cannot object where corporate books and records are involved. See Hair Industry, Ltd. v. United States, 340 F.2d 510 (2d Cir.), cert. denied, 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965); United States v. Fago, 319 F.2d 791 (2d Cir.), cert. denied, 375 U.S. 906, 84 S.Ct. 197, 11 L.Ed.2d 146 (1963); United States v. Guterma, 272 F.2d 344 (2d Cir. 1959); Lagow v. United States, 159 F.2d 245 (2d Cir. 1946), cert. denied, 331 U.S. 858, 67 S.Ct. 1750, 91 L.Ed. 1865 (1947). Even under cases in other circuits, the defendant has not made a sufficient showing to permit him to raise the question of an unconstitutional search and seizure of corporate books and records. See United States v. Hopps, 331 F.2d 332 (4th Cir.), cert. denied, 379 U.S. 820, 85 S.Ct. 39, 13 L.Ed.2d 31 (1964); Henzel v. United States, 296 F.2d 650 (5th Cir. 1961).

Furthermore, it appears from defendant's own affidavit that the books and records sought to be suppressed were not the subject of a search and seizure (see Grant v. United States, 291 F.2d 227 (2d Cir. 1961), judgment vacated with instructions to dismiss the appeal, 369 U.S. 401, 82 S.Ct. 851, 7 L.Ed.2d 840

(1962)), but were voluntarily turned over to the government.[3] See Greene v. United States, 296 F.2d 841 (2d Cir. 1961), judgment vacated with instructions to dismiss the appeal, 369 U.S. 403 82 S.Ct. 852, 7 L.Ed.2d 841 (1962); United States v. Dupont, 169 F.Supp. 572 (D.Mass.1959). Defendant's claim of deception also has no basis, for even if on September 10, 1963 the Agents were looking for tax violations different from the ones the defendant is now charged with, the defendant knew the tax liability of the corporation was being investigated and, therefore, "must have known that the agents would * * * utilize any evidence of criminal violation which they might discover in the course of their inspection of the papers turned over to them." United States v. Dupont, supra at 576; see United States v. Sclafani, 265 F.2d 408 (2d Cir.), cert. denied, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959); Turner v. United States, 222 F.2d 926 (4th Cir.), cert. denied, 350 U.S. 831, 76 S.Ct. 65, 100 L.Ed. 742 (1955). Defendant's motion for the suppression and return of papers, records, books and documents turned over to the government is denied.

*Statements made by Defendant*

Defendant seeks the suppression and return of the statements given by him to the Internal Revenue Service on the ground that he was not advised of his right to retain and consult counsel and on the ground that his answers given in the November 7, 1963 statement were obtained by fraud and deception.

---

2. According to the answers given by the defendant in the November 7, 1963 and June 4, 1964 interviews, he is the president of the corporation and the owner of 50% of the corporation's stock.

3. A failure by Agents Hines and Wolff to warn the defendant of his constitutional rights when they appeared at the corporation's premises on or about September 10, 1963 and asked for the corporation's records would not make the defendant's production of records involuntary (see United States v. Dupont, 169 F.Supp. 572 (D.Mass.1959); see also Kohatsu v. United States, 351 F.

2d 898 (9th Cir. 1965), cert. denied, 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017 (1966) (Justice Douglas voting to grant certiorari and to affirm); United States v. Spomar, 339 F.2d 941 (7th Cir. 1964), cert. denied, 380 U.S. 975, 85 S.Ct. 1336, 14 L.Ed.2d 270 (1965)), and defendant's claim that he felt constrained to comply with a "demand" for records which he treated as an official act, is inconsistent with defendant's delivery of records by truck to the government several weeks after the Agents' appearance at the corporation and in response, it appears, to a telephone call from Agent Hines.

Defendant's contention that Agents Hines and Wolff were required to advise him of his right to counsel on November 7, 1963 when he was questioned at 245 West Houston Street is without merit. See United States v. Hill, 260 F.Supp. 139 (S.D.Calif.1966); United States v. Fiore, 258 F.Supp. 435 (W.D. Pa.1966); see also Selinger v. Bigler, 260 F.Supp. 476 (D.Ariz.1966); United States v. Carlson, 260 F.Supp. 423 (E.D. N.Y.1966). But see Justice Douglas dissenting in Thomas v. United States, 386 U.S. 975, 87 S.Ct. 1164, 18 L.Ed.2d 133 (March 20, 1967). Defendant appeared voluntarily and was not in custody or deprived of his freedom in any way. Cf. Nason v. Immigration & Naturalization Service, 370 F.2d 865 (2d Cir. 1967; United States v. Bottone, 365 F.2d 389, 395 (2d Cir.) (alternative holding), cert. denied, 385 U.S. 974, 87 S. Ct. 514, 17 L.Ed.2d 437 (Dec. 5, 1966); compare Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Defendant's claim that the answers he gave on November 7, 1963 were obtained by fraud and deception is equally without merit.[4] When Agents Hines and Wolff informed the defendant they were investigating the tax liability of the corporation, the defendant, president of the corporation and owner of 50% of the corporation's stock, was put on notice that his individual tax liability might also be put in issue. See United States v. Dupont, supra. The Agents were not obligated to further inform the defendant that they were investigating his possible criminal liability for tax evasion and fraud. See United States v. Sclafani, supra. In addition, the transcript of November 7 reveals that a substantial portion of the questions asked by the agents would be relevant to the tax liability of the corporation. Conse-quently, the Agents cannot be charged with misrepresentation in their statement to the defendant that he had been asked to appear in regard to the tax liability of the corporation. Defendant's motion for the suppression and return of oral statements given by him to the Internal Revenue Service is denied.

Since defendant's motion for suppression is denied, defendant's motions to inspect the grand jury minutes and to dismiss the indictment are also denied.

Defendant's motion is denied in all respects.

It is so ordered.

---

4. The claim that defendant was defrauded or deceived is not consistent with what took place at the interview of June 4, 1964 when defendant appeared with counsel before Agents Hines and Wolff, answered questions asked by them, and did not repudiate or substantially change the answers given on November 7. Moreover, after having retained counsel, defendant signed both transcripts without raising the claim of fraud.